The Honorable, the Judges of the United States Court of Appeals for the Fourth Amendment. Please be seated. So we're going to hear argument next in Hernandez v. Bloomingdales. So, Mr. Edsel. Good morning. May it please the Court. I'm Jameson Edsel for the appellant, Marilyn Hernandez. For the exercise of specific personal jurisdiction, the Supreme Court has a very simple two-pronged test. The first prong is that the plaintiff has the prima facie burden of showing the defendant has taken some voluntary action to avail itself of the form. Well, let me ask you first. You've got, as I understand it, there's two defendants here. You have Bloomingdales, LLC, which I assume is the store you walk into, and Bloomingdales.com, which would be the internet arm. So have you alleged specific personal jurisdiction as to both? Yes, we allege they're acting together as an integrated retail enterprise. So there really is only one Bloomingdales. They may have divisions that are... Okay, but we agree these are separately incorporated entities, right? As far as I know, yeah. And have you made, or did this court make any findings that we're going to pierce the corporate veil because they're essentially alter egos? No, I don't... Okay, cite one case for me that says you're allowed to do personal jurisdiction analysis that way. You have two separate legal entities, and you say, we'll just mash them together for personal jurisdiction purposes. Well, we say both defendants did the same thing. But that's facially... Well, first of all, your complaint doesn't really allege that, and second, that just seems to me... That almost feels like it flunks Ickball, the idea that literally every single thing that's mentioned in your complaint was done jointly by both of these separate legal entities. Right. Well, I think it's important to keep in mind that we're at the Rule 12 stage. Right. That's why I said I think such a suggestion to the extent you make it flunks Ickball. Well, a plaintiff does not know, as an average person, there's no way to know within the Bloomingdales enterprise which LLC is responsible for which activities. We do have things called jurisdictional discovery, right? We have things called jurisdictional discovery, don't we? Sure, and I think if it was going to turn on anything we could find in jurisdictional discovery, I mean, we'd find it. There's no question that they're both engaged in both of these enterprises, which is operating the retail store and operating the website. They're doing both things. Both LLCs are involved in both things. Both entities. Hold on a second. So the Bloomingdales LLC, which you initially said, you agreed with me that that was the physical entity. Well, I actually don't know that, Your Honor, and I don't think any plaintiff writing a complaint could know that for sure. I mean, when you're filing a complaint, all you know is the website says it's operated by Bloomingdales LLC, or you walk into a store and you don't know what technical company within the Bloomingdales family is actually owner of that store. No one knows that from the outside. You actually, you would need jurisdictional discovery to get there. You also have information and belief allegations, right? Yeah, but we, again, we allege in the complaint that they are both involved in both operations. Both corporate entities. But it's not enough to say that they're both involved at some level, because you can't do a specific personal jurisdiction analysis by alleging that two separate legal entities are both involved in the same kinds of things, because these cases often turn very carefully on like, what exactly did you do? That's enough for purposeful availment, but this is not enough for purposeful availment. That's enough for nexus, but this is not enough for nexus. And so it's not even enough to say that they're both involved at a high level of generality. If the district court had ruled on any of those grounds, we could have moved to amend the complaint and then looked for jurisdictional discovery. We didn't really get that opportunity because the judge here didn't do any of that type of analysis.  But how about on appeal, where your friend on the other side raises this same argument that they also made before the district court, and as far as I can tell, you literally don't respond? The argument is, you simply can't do personal jurisdiction this way. And as far as I can tell, you literally don't respond to that argument. I think the good faith reading of the complaint is that we do allege on infection But you don't respond to their legal argument that you cannot do personal jurisdiction analysis this way. I think you can do personal jurisdiction analysis. What case says you can do that? Well, I'd like to point out the Ninth Circuit in a case against Bloomingdale's a couple months ago said they made the exact same argument and they dispensed, the Ninth Circuit dispensed with it in one sentence. They said the plaintiff alleged they both were engaged in these things. That's enough. We're at Rule 12. If they want to show, and the case is Mikulski, is the plaintiff's name, versus Bloomingdale's a few weeks ago, if they want to challenge personal jurisdiction on the basis of this defendant doesn't do these things, they can raise that type of factual argument. But in the district court, that's not really where this went. This went, all we have is a website and you can't bring a defendant into a state based on a website. And we said, no, no, no, wait. This is a wiretapping case and we're talking about a defendant that has a physical sore here, sells products. No, no, we're talking about one defendant. Two defendants that both operate this store. They both, they're both involved. You can buy products. Do you bring this case to the attention of the court? Which case? The Ninth Circuit case you're talking about. No, I didn't file a Rule 28J letter, but. Your colleague on the other side does know, was not given advance notice that you planned to raise this case at argument? I suppose not. I don't. Was the court? No, but they were the counsel in that case. They know, they know that occurring. And I, some courts. We weren't. I apologize for that. Some courts have different approaches to Rule 28J. Some prefer that you don't file things before the argument because you can just talk about them at the argument. And I apologize if I didn't follow the court's preferred method on that. Well, let me take you in a slightly different direction. We may very well come back to this multiple defendant point. And this case presents several conceptually difficult issues. So don't be overly concerned about the clock because we're really controlling the clock. And I'd like to delve into some of these things. So setting aside specific personal jurisdiction, which we will come back to, you know, a court gets essentially to choose how it wishes to proceed. If the issues are personal jurisdiction and standing. And I have some degree of difficulty seeing that your client has standing here. And last month, both the Ninth Circuit and the Third Circuit decided the session replay cases, which seems like what you have, and they said, no, those plaintiffs don't have standing. Why does your client have standing? So the client here, this plaintiff has a classic privacy harm, which is the intrusion upon seclusion. It's also related to the type of harm that would traditionally be protected at common law by trespass. Our other circuits didn't seem to buy that. Yeah, they're incorrect. That's an important question. Do you think there is any way to distinguish those decisions? Factually, no. These are basically identical cases. I'll give you that much. We would, under that circumstance, we would have to say, okay, we're creating a circuit split. These guys are wrong. We're right. Yeah, and it's good to be on the right side of the circuit split. And the mistake that those courts made is they're not, first of all, they're not really following the Supreme Court's test in TransUnion and Spokio. All they're doing is they're going straight to this common law tort. And they're saying, well, on this element of whether it's personal or this element of whether it's an offensive invasion, we don't think you have enough there. They're basically saying you don't state a claim. That's not the way the Supreme Court has said to do this test. You have to look abstractly at the right invoked by the plaintiff, and is it close enough to something that was actionable at common law? Okay, so let me think of an analogy that seems obvious, which you surely thought of, which is the nosy clerk who follows me around the store and carefully observes every single thing I do while I'm in the store. That's an analogy that I — Seems like a pretty directly on point analogy to me. I think not, because in that analogy, you're out in public. And here we're talking — a better analogy is — But I don't think I'm in public. I think that I have carefully — to be clear, this is not a hypo where they're peeping in the changing room or something, but like, I've made some — okay, so actually, let's take the Vegas casino analogy. Let's assume that I — assume that absent being in a bathroom or in a hotel room, that every single place I go in a Vegas casino is crawling with cameras. Yeah. And even if I go off into a little vestibule where I think that no one's observing me, in fact, I am being constantly observed. Do you think I have standing then? Well, I have a view of standing that, yes, you have standing. You might not have a claim, because — How is that an intrusion on my seclusion? I'm in a Vegas casino. Well, when you go to court, you're invoking that right. And that's what the standing analysis is about. It's about what right you're invoking. It doesn't mean you've stated a claim. It doesn't mean you have a good case. It just means you're tapping into a right that the courts traditionally recognize. That's standing. So standing — this is the point I was making about the Ninth Circuit and the Third Circuit. They went straight to the merits, and they said, well, you — this wasn't offensive enough, and the data involved isn't personal. This court, I would also like to mention, just a couple weeks ago in the AFTV Bessem case, which my friends did file as a 28-J letter, there's a very good description of what interest is protected by the intrusion upon seclusion harm. And it's the — Well, before — The looking — Before you go there — Yes. I want to make sure I'm understanding your argument. You seem to be saying, in response to Judge Heitens, that as long as I plead whatever the generic argument is, intrusion upon seclusion, I have now established standing. I think you need to have a fact pattern that shows you're in this ballpark, where the defendant did something that arguably is invading that right. So the better analogy — not the public store and not the casino — the better analogy is someone opening your mail or someone literally eavesdropping outside your house. Those are the classic forms of intrusion upon seclusion. They predate technology. But they were certainly actionable. If someone opened my letters without my permission, it doesn't matter what's in those letters. They've invaded my right. Now back then, that might have been a trespass upon chattels claim. They opened my mail. They interfered with my property, right? But as the 20th century and the new technologies developed, we developed torts like intrusion upon seclusion that take away the element of the physical invasion. Because we know now that people can peer into our lives using technology. But what is the specific information that your client alleges was shared with Bloomingdale? She — The software. So it's the fact that she was — My understanding is how she moved her mouse or where she lingered on a particular product. The fact that she's on the website at all. None of that is any third party's business without her consent. And there's a law that says — But you haven't sued the third party. You've sued — it just seems intuitively challenging to me to say that if I go to someone's website, it intrudes on my seclusion that the people whose website I'm on track what I do on their web — you haven't sued these third parties. You've sued Bloomingdale's. It's a procurement theory. The injury comes from the fact that a third party is getting real-time access to what you're doing. We're very clear about that in the way we set up these allegations. We're not complaining that Bloomingdale sees that the plaintiff is on Bloomingdale's website. That doesn't make sense. And Bloomingdale's obviously is going to know that people are on Bloomingdale's website. Yes. The problem is there's third parties that are seeing everything — as we allege, this is a very comprehensive collection of data. It's everywhere you move your mouse, everything you type. A third party is getting that in real time without your knowledge. That's the invasion. That's the intrusion. That's the peering. And it's the third party that we don't know about using technology. That's what makes this a classic intrusion. Do you allege that this third party, who I assume is some sort of an agent then of Bloomingdale's, does something with this other than give it to Bloomingdale's? We have allegations in there that this is used for marketing purposes. This is used to — I mean, I think Bloomingdale's — Marketing by whom? Bloomingdale's is the primary beneficiary of the data that they collect, I would assume. But the third party, we don't know exactly everything that they can do with this. But you haven't alleged that they've done anything with any party other than Bloomingdale's? We don't have any specific allegations about that, no. But they shouldn't have the data in the first place, is our point, without our consent. There's a legitimate use to this technology, but you need to tell people you're using it, and you need to get their consent. Well, what would be the difference if Bloomingdale's hired its own group to do this, instead of, under your allegations, contracting with a third party? So everything was in-house. Is that all the same? No, because there's no legal separation of the parties. And I think that is important in the law. Having separate legal parties is a difference. Third party wiretap on... I think it's really, really, really important that Bloomingdale's uses a separate legal entity to collect this agency, rather than doing it in-house. But it's totally irrelevant that you exclude two different companies that were matching together for personal... You should be very selective about when it matters that there are different entities involved. My position on the allegations with respect to the two entities and what they did is that we alleged both of them did all of these things in Maryland. That's our allegation. We do use collective nouns. I don't think there's anything wrong with that. Defendants, these two entities, did this. That's a factual allegation. No, no, hold on. Think about a 1983 case, like a failure to protect or failure to train claim. And the idea is, like, I'll just sue, like, 17 prison guards and then just make all of the allegations after that defendants. And you're like, you can't do that. They're different people who did different things in different places. But here's the thing. You define them all as defendants. You can't match them all together. I think in this case I can. There's only two and they are the same company. Bloomingdale's is Bloomingdale's. They can subdivide themselves however they want. There's one Bloomingdale's. It's a brand name. They control the brand. They work together to sell physically and on the Internet. I don't think it's a big problem at Rule 12. Does your complaint include allegations of the, how the corporate entities are set up? I mean, is there, are, are you saying there's, well, if it's not a complaint, it doesn't really make any difference. I mean, we don't know if there's a holding company, whether these are brother-sister corporations or what. If I may answer, I'm in, I'm in the room. We're going to give you a little, we've got to come back to a specific personal jurisdiction. Yeah, the, I believe the complaint says that the, one of the LLCs is, you know, controlled by maybe the Inc, the Inc entity. I, I can look while I'm sitting down and get the specific. At the very least, the defendant's brief represents that, that the website is a wholly owned subsidiary of the other company. Could be, well, and also you say the website, and again, there's nothing in this record that says this company runs the website. Sorry, the corporate entity known as Bloomingdale's Inc. Right. Represents as a wholly owned. So we, like, when we're putting together the pleadings, we, we just don't, you know, we don't know enough to make allegations at that level of granularity. So why don't you go back and just take a minute to tell us what specific activity does Bloomingdale's direct into Maryland as opposed to all the rest of the Western world? Well, they have a store here, we allege that. They ship products here, we allege that. And they send the code that caused the wiretapping to the plaintiff's computer while it was in Maryland. So that's an electronic contact directed into the form, and that's what the claim arose out of. And right there. Yeah, but your client goes on the website. I mean, Bloomingdale's didn't come after your client. Your client went after Bloomingdale's. But they came here to do business. And so once people start taking them up on their offer, and going to their website to do business, that's it. If a claim arises from that activity, it's fair enough that they face the claim here, because they chose to be here. If they had no physical store in Maryland. If they did not. If they did not. Does that fit your claim? Actually, no. It gets us pretty close to the facts of the Briskin v. Shopify case that the Ninth Circuit decided on Bonk, and they also filed that one. Well, actually, that came while the briefing was still open. So I talked about it in the reply brief. But how would that not be foreclosed by our opinion in Fidrick? Fidrick is way factually out of the ballpark here, because that was about a claim that happened in Italy, and the plaintiff was trying to sue in South Carolina. So I agree with you that factually, Fidrick is way out of the ballpark. But Fidrick's analogy, and I think there would have been a very easy way to describe, to decide Fidrick that has like nothing to say about this case. But it seems like the way we decided Fidrick says quite a bit about this case. Well, not the facts. In other words, I'm not going to be persuaded by you telling me the facts of Fidrick are very different. I agree the facts of Fidrick are super different. And I can imagine an opinion in Fidrick that says nothing about this case. But that's not the opinion we brought to Fidrick. Yeah, so I think the easiest thing to do is go back to the basics. Two prongs. Purposeful availment, and then the arise out of or relate, you know, relate to activity in the forum prong. Fidrick clearly fails on the second prong, the arise out of prong. The claim didn't have. That is not the basis on which this court decided Fidrick. In fact, that's the basis that the court said we're not going to decide it on that grounds. We're going to decide it on the other grounds. Well, you know, after that, we've had the Supreme Court's decision in Ford Motor. That's not an argument that Fidrick doesn't say that. That's an argument that Fidrick has somehow been abrogated by Ford. I'm not sure, really, maybe, Your Honor, you could clarify, like, what aspect of Fidrick do you think speaks to this case in a way that would cause us to lose? The whole discussion about how the website works and why that isn't purposeful availment, and the fact that I can, the fact that I can in Marriott, the fact that I can in South Carolina go on a Marriott website, and I can reserve Marriott's all over the world, and I can buy things from Marriott, and that Marriott, when I do that, is gathering all kinds of information about me, and that that's directing conduct, that Marriott's drop-down menu lists South Carolina, right? That all seems pretty directly germane here. I think that all, and in this type of case, I think it still shows purposeful availment in South Carolina, even if the court didn't hold that. It goes to it. And here, yeah. I thought a holding in Fidrick was there wasn't purposeful availment in South Carolina. And I think it should have been decided on the rise out of Prong. It was a little bit wrong. If I was in Fidrick, I might agree with you. I actually think it's kind of confusing, and it doesn't really make that much sense when the rise out of Prong is really where you want to go with that one. But let's bring it back. Let's bring it back. You can have a website, right? It's accessible everywhere. I agree, that alone is not enough. That's not enough of a jurisdictional hook. You need more. Okay, let's look at our case. We have the website, but we also have a store. We have sales into the forum that are both in-person and through the website. I thought you just told us a little while ago that you don't need the store to make your argument. Under the reasoning in Briskin, which is the Ninth Circuit's en banc decision and is very cogently reasoned, you don't need the physical store, but we do have it here. So why not talk about it? They've availed themselves of Maryland. They want to do business here, physically and electronically. So we're done with that Prong. They've availed themselves of Maryland. Let's move on to the rise out of Relate to Prong. What's this case about? It's about an electronic contact that invaded the plaintiff's privacy in Maryland. It's here. It's located here. It's part of their business. It's part of what they're doing every day. The store didn't avail itself. The physical store? No, the store didn't make the contact on her computer and track her comings and goings on the computer, presumably. It was the website. So we're back to the piercing the corporate veil, no allegations in the complaint about that. On the issue of standing, specifically, are there allegations in your complaint about what specific information your client disclosed and what happened to that information? Not general allegations about what this software does, but specifically about your client and her injury. She searched for products. That's our allegation. And that's what they know. She looked at products on the website. That's what's in the complaint, and that is enough. Anything, you open that letter, you read anything I wrote to someone else without my permission, you've invaded my privacy. So explain to me why you've invaded the letter. Fair enough. I guess both as a historical matter and as an intuitive matter, I'd buy the argument you opened my mail. You had a third-party agent keep track of what I did while I was on your website, which I chose to come to. I guess, again, I will say the analogy to opening my mail strikes me as an imperfect at best analogy. Would you like to try to convince me why that's the right analogy here? It's a good one. How about this? I hired someone to tap your phone. Even though I'm a party to the phone call, I hired my friend to listen in so they could hear as well. And report back to me any insights they might have from our conversation together. And to make that example work. That's illegal. Sorry, to make that example work, we're in a state where it's totally legal that one-party consent is sufficient. In other words, that I could 100% record the call myself, but it becomes a problem when I hire someone else to do it. In some states, you only have a one-party consent requirement. In others, you have an all-party consent requirement. No, but I'm just saying, you conceded before that there's nothing wrong with Bloomingdale's knowing where I go on the Bloomingdale's website. So to make that analogy work, we have to assume it's a state in which it's perfectly okay for either side to record, but it becomes a problem when the side that decides to record enlists the help of someone else to do the thing they themselves do. Yeah, so I think I'll go back to my other point. When we're talking about Article III harms, we're talking about the right the plaintiff is invoking. So even in that situation, they might be doing something perfectly legal and they're going to win the case. The plaintiff has standing because they've invoked that right. That right exists. We can debate as the case moves through the merits. Did they state a claim? Is this real? Like, is there a consent defense? Those are things the court deals with once jurisdiction is established. We're at the very opening gate here when we're talking about standing is, has this plaintiff even invoked a right that conceptually exists and has been traditionally protected? Does that answer your question? All right, we've been pretty generous on time, and we thank you for indulging us there. So we'll have some rebuttal time, and now we'll hear from Mr. Burchard, or Ms. Burchard. Apologies. Good morning, Your Honors, and may it please the court. Kendall Burchard for the Bloomingdale's Defendants. So you've heard a lot this morning about both personal jurisdiction and standing, but this court could affirm for either of those bases. I'll start with personal jurisdiction, though, and some of the corrections on the two defendants here. So as this court has said, and as the Supreme Court has said, the personal jurisdiction inquiry turns on an individual defendant's contacts with the form. And here, there are two defendants, and they have not alleged facts against both of those defendants separately. Simply, they've treated them together. We argued below that that was impermissible. That's on JA 46, where the district court recognized that we had made an argument that these defendants should have been treated separately. Importantly, below, the plaintiffs never asked for jurisdictional discovery and eventually added the bloomingdales.com LLC as a defendant upon amending their complaint. So as your point here, we made the argument the district court just didn't get to it? That's right, Your Honor. But just playing to this court's intuition that for personal jurisdiction purposes, the defendant should have been treated separately. And here, they were not. I'd like to speak a little bit about the Ninth Circuit's decision in Mikulski as well. My friend on the other side has referenced it. And there, the Ninth Circuit, in an unpublished decision, did not entertain the corporate separateness of the two defendants. We would respectfully submit that was an error. Mikulski was also compelled by the Ninth Circuit's decision in Briskin, which is in tension with this court's approach to personal jurisdiction over web-based contacts, in particular. As this court has already discussed, FIDRICH decides this case. And this court's test established an ALS scan. And there, the court is very concerned with specific targeting of the form by these web-based contacts. Because that is sufficient to show that a website operator has purposefully availed itself of a form. So can I ask you what my concern about these cases is? It seems to create a world in which, because you do something everywhere, you're subject to personal jurisdiction nowhere. And I've mentioned earlier, Tay, that seems intuitively insane and obviously wrong, right? So could you tell me where you think Bloomingdale's is subject to specific personal jurisdiction for these specific allegations in this complaint? Because if the answer is nowhere, I'm going to suggest that I think something has gone wrong with our theory of specific personal jurisdiction. So, Your Honor, my friend on the other side has conceded that Ms. Hernandez is proceeding under a procurement theory. And so we would submit that Bloomingdale's would be subject to personal jurisdiction at the place where they procured and embedded the session replay code on the website. That is not alleged within the complaint. So like the place you'd have to figure out, so this is some sort of contractual arrangement with this third party. So it's like this contract was made somewhere, this agency relationship was created somewhere, and they'd be subject to specific personal jurisdiction there? That's right, Your Honor. In addition, Bloomingdale's.com and Bloomingdale's LLC would be subject in their places of incorporation and principal places of business. But saying that there's always a place that you're subject to general jurisdiction, I guess what I'll say is the whole idea of specific personal jurisdiction is general personal jurisdiction is we can sue you for anything there, anywhere, right? And specific is, I don't know, if the stuff you did is connected to this place, you're subject to personal jurisdiction there, even if you wouldn't be subject there for things that aren't connected to the stuff you did. But at least implicit in that, it seems to me there must be somewhere where you're subject to specific jurisdiction based on the stuff you did. That's right. And under the plaintiff's procurement theory, that would be where the code was procured and embedded on the Bloomingdale's website. And you're telling us that I'm not quite, that there's nothing in the complaint that alleges where that happened? That's correct, Your Honor. That is not included in the complaint. And I think that speaks to the complaint more broadly and the lack of plausible allegations within the complaint. As came through in the court's discussion of standing, Ms. Hernandez has alleged very few things on her interactions on the Bloomingdale's website. At paragraph 61, she says that she visited the Bloomingdale's website, but she doesn't allege anything further. She simply says that she accessed the website and then presumably left the website. And that's insufficient to give her an Article III concrete injury for this case to proceed. Can I go back to personal jurisdiction for a minute? Although this relates, the same thing here relates to standing. So I am familiar with the argument that you all have. It's basically, they say, we mentioned embedding in the complaint. And you say, well, yes, but that's not the theory that you relied on to get personal jurisdiction in the district court. And they say, yeah, but we do say in the complaint. So bracket for the moment, the question of whether this is adequately preserved adequately before us. If, let's just say, the complaint alleged in crystal clear fashion, I went onto your website and our two little computers had a handshake. And the little handshake does make clear if one wants to know that I'm in Maryland. And after it makes clear that I'm in Maryland, it then sends a little piece of code over to the internet and burrows it into my iPad while I'm in Maryland. That seems like that pretty obviously does establish specific personal jurisdiction in Maryland. Again, I know your argument is they haven't really alleged that. But are you challenging? I know that you're taking issues whether they've made such a claim on the facts. What I guess I'm trying to figure out is, do you challenge that that claim would work legally? So if the contention was that Bloomingdales knew that the plaintiff was in Maryland prior to sending the code or sent her the code because she was in Maryland, then that would be sufficient for personal jurisdiction. I realize it's a corporate entity. It's inchoate. This is all really happening over computers. But the legal fiction is that Bloomingdales in that world is deciding to reach out and touch Maryland. And once Bloomingdales reaches out and touches Maryland, and in a world in which the allegedly unlawful conduct is the doing of that thing, there is a one-to-one correlation between the allegedly unlawful conduct and reaching out and touching Maryland. So we have personal jurisdiction then. That's right, Your Honor. And both the First Circuit and the Third Circuit, the First Circuit in a case against Bloomingdales.com, put dispositive weight on that knowledge. Can I then ask, why does it matter that Bloomingdales? This goes back to my concern about the district court's theory of personal jurisdiction and the First Circuit's theory of personal jurisdiction. That suggests to me that because they are so cavalier that they're willing to do it anywhere, that means they're not subject to personal jurisdiction. Another way to think about this, imagine their protocol. Imagine they were really concerned about sanctions or something. We need to make absolutely certain that the customer isn't in Russia because we'd be violating sanctions if we did that. So we need to know where the person is so that we make sure we don't accidentally do business to someone we're legally prohibited from doing. And if they did that, and in the course of doing that, learned that you're in Maryland, then they're subject to personal jurisdiction. But because the allegations are, we're so indiscriminate, we don't care where they are. The minute a computer pings our website, we send the code, it literally doesn't matter where the person is. Why does that make it better from a personal jurisdiction standpoint? That sounds like you're targeting the world because you're making no effort not to target the entire world. Well, so at least as this court has decided in ALS Scan and then reaffirmed in FIDRICH, that simply having a website that is accessible in the form is no reason to assert personal jurisdiction. But not just that it's accessible in the form, it's that you're actively willing to do business with anyone, literally no matter where they are. That's right, Your Honor. And again, that is comparable to the website at issue in FIDRICH, as you discussed earlier. So the Marriott website is interested in doing business wherever someone may be and does business all over the country. Same with Bloomingdale's. Bloomingdale's happily welcomes customers from every state in the country. And that is no reason to exercise personal jurisdiction over its website, in particular because this court has made abundantly clear that a website must be purposely directed at a forum in order to exercise personal jurisdiction over it. Because if the converse were true, then website operators would be subject to personal jurisdiction everywhere, and that would offend due process. If I understand your earlier answer to Judge Hyten's, if the complaint contained the allegation that before the plaintiff could access the Bloomingdale's website, Bloomingdale's asked them, whichever Bloomingdale's it was, Bloomingdale's asked the person to identify their state of residence. And so they identify the state of residence as Maryland. And then the source replay code is sent out at that point. Your answer to that hypothetical was that would be sufficient for specific personal jurisdiction. It likely would be, because that would show a very express aiming of the forum and a concerted effort to target the forum in a way that is simply not alleged here. She does not allege that Bloomingdale's had any prior knowledge of her location or that it specifically sent code to her because she was in Maryland. Can I ask you, though, doesn't this suggest, if we take this type of conception of how tight it has to be for specific personal jurisdiction, it almost suggests to me that Ford is wrong. Because in Ford, the plaintiffs did not sell the accident-involved vehicle in the forum state. And the one thing I know is that Ford says that is not how we do specific personal jurisdiction. What was enough is that Ford, you sell vehicles in this state. It turns out you actually sell the same kind of vehicle in the state. You advertise in this state. It doesn't matter that this specific vehicle. In other words, why doesn't your analysis and the fidget analysis and the First Circuit's analysis actually suggest there wasn't specific personal jurisdiction in Ford? So a couple of responses to that, Your Honor. First, as you highlight, the vehicles that malfunctioned were not sold in the forum. At the same time, in Ford, it mattered that Ford had created a market for that specific type of vehicle in the forum. It was the case that they sold other models, that they sold the same sort of model in the forum. They advertised those models in the forum. They serviced those models in the forum. And so everything related back to that physical product. And Judge Hardiman, in the Third Circuit opinion, and Hassan spoke about how the equivalent here of that physical product would be the website. And it mattered that the website was not advertised at the forum. It mattered that the website was not the focus of the defendant's conduct. It all goes back to that physical product and how Ford created a market for that physical product. And here, that's not what we have here. The plaintiff is looking for shoes of a particular kind. And Bloomingdale's has sent those particular shoes to the Bloomingdale's store in Maryland. How is that different from the marketing and supply situation in Ford? All right. Taking a step back, she hasn't alleged any sort of purchase here. Right, I understand that. And her theory of harm depends solely on accessing the website. So as my friend has conceded, they are proceeding simply on a procurement theory rather than buying anything and being harmed from the physical product. So at the time she accessed the website, her harm was complete. As a result of that, any sort of interest, the reason why she was going onto the website, whether she completed a purchase or not, doesn't matter because the harm is tied only to accessing the website. That explains why the informed sales or the Bloomingdale's stores themselves are not related to this litigation because they are not at all tied to the website. Can I take you, I'm going to go back to the sort of related that this seems like because they're targeting the world, it's not enough. So keep everything about this case exactly the same. But instead of embedding the code, the allegations, instead what they do, the allegations are, again, no one's saying these are the allegations, much less what actually happens in the world. But say the allegations were that what you do when I go onto your website is you hijack my webcam and you proceed to take a picture of me. Like I literally go on about your website and the first thing you do is you hijack my webcam and you take a picture. And to be clear, you hijack everyone's webcam no matter where they are. You don't care. In fact, you hijack my webcam before you even know what state I'm in. And that suggests that I don't have personal jurisdiction over me. Because you would massively invade everyone's privacy everywhere, you're not subject to personal jurisdiction anywhere. This just seems really weird to me. Your Honor, that's a very tough question. It does sound that hypothetical. Your theory does suggest to me that there would be no personal jurisdiction in Maryland if her allegations were you hijack my webcam and took a picture of me. No, Your Honor, I think that does get into standing, though. But why does your theory of personal jurisdiction not suggest that there's no personal jurisdiction even there? Our theory of personal jurisdiction is tied to where the tortious conduct occurred. And in your hypothetical, I think we can agree that the tortious conduct would be hijacking the webcam and invading someone's privacy in that way. Here, the tortious conduct that's alleged is the procuring and embedding of the session replay code. That matters because, again, that's where the site of the alleged harm was. And as this court made clear in Khashoggi, any sort of interception theory is. Why isn't the embedding in Maryland? The embedding happened when the embedding is on the computer that has the embedding done to it, right? No, Your Honor. So that's one important difference in the technology that was at issue in Briskin and that is alleged here. Session replay code simply operates on an individual's browser, whereas the technology in Briskin dealt with a cookie that was permanently installed on an individual's device. Very different, and in particular for thinking about some sort of physical trespass theory. Well, you just said permanently installed. I don't see any plausible reason why you distinguish between a temporary and a permanent cookie, right? If you reach out and touch my computer, you reached out and touched my computer. The fact that you then later deleted it doesn't mean that you didn't reach out and touch my computer. Your Honor, again, this doesn't operate on a computer. No, actually, you said permanent. The distinction you're drawing does not depend on the permanent versus temporary nature of the cookie, right? No, Your Honor, this is also not a cookie. As Ms. Hernandez alleges in her complaint, session replay code is not a cookie that impacts the physical device. This session replay code technology simply operates on the browser. But with my remaining time, I would like to say a little bit more about standing, because she has failed to plead a concrete injury sufficient to confer standing, because she has failed to identify any private information that was collected by the Bloomingdale's website. If we were to agree with you on standing, and we were to rule on that ground, would it be appropriate for us to remand with instruction? I know that the district court judge in the Lomacourt opinion dismissed with prejudice. Would it be appropriate for us to dismiss without prejudice? That's right. Or remand with instruction to dismiss without prejudice? That's probably right, Your Honor. This court has reaffirmed time and time again that jurisdictional dismissals should be without prejudice, because- In fact, haven't we recently said they have to be without prejudice? Yes, Your Honor, in an opinion you authored, I believe. But does that really fix the problem? Because that was a personal- the case you're talking about was a personal jurisdiction. So can we all agree the district court was dead wrong to dismiss this case with prejudice, because you literally can't dismiss for lack of jurisdiction- for lack of personal jurisdiction with prejudice? That may have been an error, but for the sake of judicial economy, I think it's worth highlighting that Ms. Hernandez has had an opportunity to amend her complaint before. This was exactly what Judge Brinkman said in effort. Just to play that out, though, Your Honor, she has had an opportunity to amend Docket 19 at the district court. It contains a red line of that amendment. She included many allegations that were intended both to support jurisdiction and standing. And so for the sake of judicial economy- But it just feels like you'd went on preclusion. Because if we affirm the dismissal for lack of personal jurisdiction, and then she refiled- and said without prejudice, and she refiled, you would just move to dismiss immediately and say this is issue preclusion. There's already a holding that she doesn't have personal jurisdiction. That's fair, Your Honor. But to round out the discussion of standing, though, I did want to circle back to a couple of things that came out in my friend on the other side's discussion with the court today. I'm assuming you agree with the Ninth and Third Circuit's decisions. We do, Your Honor. Yes, we do. And as Your Honor highlighted, this court would create a circuit split if it were to find standing in these circumstances. Because as my friend has conceded, there are no factual differences between these complaints. And indeed, if you look at Ms. Hernandez's complaint, it's even less alleged and less robust than some of the other complaints out there. So at least in Popa, the plaintiff alleged that they had viewed particular merchandise and had added something to their cart. And here, Ms. Hernandez simply alleges that she accessed the website. That's a paragraph. Could you address your colleague's argument that that, with respect to those other courts, which we'd have to explain how to say this, but that that confuses standing and the merits? That's saying that the person has a bad claim, that maybe they should lose the claim. But that doesn't mean they're not standing to make the claim. That, I understand, would be one of their main arguments. What is your response to that? Your Honor, a couple things. So in TransUnion, the court makes clear that there are two separate inquiries here, both the standing and the merits analysis. At the merits, we'd be looking at the elements of the claim. Here, we are simply looking at whether she has alleged a harm that's similar in kind to harms that were actionable at common law. And she has failed to do that, again, because she has failed to allege any sort of communications with the Bloomingdale's website, let alone any private communications with the Bloomingdale's  She has no reasonable expectation of privacy in her mouse movements on the Bloomingdale's website, especially as to the website operator. And Judge Heitens, you mentioned earlier the analogy to the store clerk. And that's particularly apt here, as both the Eighth and Ninth Circuits have held. They've discussed how the session replay code technology and tracking movements around the website is quite similar to a store clerk. But you're the one who introduced the Fourth Amendment where it's reasonable expectation of privacy. But the response to that, as I'm sure you thought of, is carpenter, which is like saying, sure, it's true that in some sense, searching my phone is like searching my wallet. But anyone who lives in the world of the universe of 2025 knows it is not. That's what carpenter says, right? Why isn't there an equivalent argument here? Sure, the nosy clerk can follow me around. But the nosy clerk gets tired. And the nosy clerk doesn't have unlimited attention. And the nosy clerk is not creating an instantaneous comprehensive record of every single thing that they've memorized. You're the one who introduced the Fourth Amendment words. Why is that not an argument for why we can't simply import the nosy store clerk? So, Your Honor, the nosy store clerk is also joined by other patrons in the store. And the movements and individuals' movements, a reasonable consumer does not have any reasonable expectation of privacy in their general movements around the store, vis-a-vis the store, or vis-a-vis other patrons. And that's the same circumstance here. So let's just assume for purposes of argument that we were to agree with you on standing. So we dismiss for lack of standing, but without prejudice. What happens then in the district court? Does the plaintiff get to amend again? I mean, you can raise whatever arguments you want, the amendments futile or whatever. They would be able to address both standing and personal jurisdiction at that point, wouldn't they? The plaintiff has requested leave to amend. If this were to go back, the plaintiff would need to ask the district court for leave to amend. It's also the case that despite asking for an opportunity to amend from this court, the plaintiff has not asked, has not said that, has not offered any color on what her additional allegations would be. Again, she has had an opportunity to amend previously. And so I am doubtful that she could amend anything else. Right, but there's no issue raised on appeal with respect to any potential amended complaint. Apologies, Your Honor. We are discussing the amended complaint, and that's the operative complaint here. I understand- Right, but I mean, if it goes back and they amend again, we're not discussing anything about some amendment we haven't seen. That's right, Your Honor. Okay. With the court- All right, anything else you want to tell us, or we gave you the other side of quite a bit of extra time, but you got anything else you want to tell us? Your Honor, I think I've made my points, but thank you for your time today, and we respectfully ask that you affirm. Thank you. All right, thank you very much. Mr. Edsel, you've got some rebuttal time left. Thanks. Since I know I went over, I'll try to just keep it short and then only respond to the court's questions. On standing and talking about the nature of the right that we're invoking, I just want to read two sentences from this court a few weeks ago in the Besant case. It is not the information obtained, but the knowledge that a third party is engaged in targeted snooping that causes the harm. And then they're quoting a note, a law review note. The harm from an intrusion occurs even when no information is acquired. So I think that's really important. We're talking about a right to exclude people from a private sphere. That's the right we're invoking. We're saying these wiretapping laws protect that sphere. You can have communications safe in the knowledge that no one is using electronic devices to hear what you're talking about with the other party. I don't see any problem in the Supreme Court's Spokio transunion decisions. I don't see any disconnect between what they're talking about, a concrete intangible harm being, such as intrusion upon seclusion, and the legislature's right to identify electronic communications as completely protected from outside interference without consent. This is right down the middle of the plate of the type of thing a legislature can do. It can adapt legal protections to changing technology. That's what these wiretapping laws do. They say you cannot listen to someone's phone conversation, period, without their consent. It doesn't matter what they're talking about. It's not the nature of the information that might be obtained by the other person. It's the fact that they're listening without your consent. That's the injury. So that's why we have Article III harm here. It's pretty simple. This is a classic privacy injury. It would be actionable in analogous circumstances in other technologies like the mail, like eavesdropping. To continue with that analogy, you should again distinguish, say, transunion. And the difference between what you just said there and the Fair Credit Reporting Act issue in transunion, I mean, you could say basically the same thing in transunion, which is like, it's really, really, really important that you don't get my credit data wrong. We understand that may not have been an action of common law, and yet we have transunion. Well, there's a group of plaintiffs that prevailed withstanding in transunion. Well, that's that they did something. Well, I'm not sure that helps you, because the plaintiffs who prevailed in transunion are the ones that suggest that transunion actually did something with misleading information. Yeah, they shared it outside. That's a defamation type harm. So that specifically is about an injury you cause by saying something false about someone else, right? And we're not in that type of injury. We're in a different privacy injury, the sphere where you can exclude people from listening to your conversations, even if it's with a merchant, even if it's with a retailer. If I had written a letter to a clerk in 1820 and said, sir or madam, please, I would like to order five of these. Here's my payment enclosed. If someone opened that mail without my permission, they violated my rights. Now back then, like I said earlier, that'd be a trespass at chattels. But the point is the law protected that right. There was a protection of that right. And the only thing that's changed is its technology. And so because there wasn't, now today, you don't need a physical invasion, right, to overhear what someone's doing. That's why we have the legislature step in and say, you can't use devices to do the same thing that back in the day you had to actually trespass to do. If that merchant back in the day had taken the letter that was sent and given it to their accountant for purposes of accounting, that wouldn't have been, that's awkward. Yeah, it's a different fact. It's because that's an after the fact, handing over information after the fact from one person to another. You can tell someone a secret and they can turn around and tell someone else. Privacy is always. What if the bookkeeper is the one who opens all the mail for the merchant in 1820? I mean, if we're gonna talk about that, I think there's an implied like, okay, if you're sending mail to this person, they will do something they need to do for the business of fulfilling your order. They will share your letter with whoever they need to share with to fulfill your order. But these types of companies like Full Story, the session replay provider here, they're not engaged in actually selling products to the plaintiffs on Bloomingdale's website. This is a marketing function and an advertising function and whatever else they wanna say, website improvement function that they're doing on the back end. I'll grant that. Hold on, the bookkeeper there in 1820 is getting the information that the person has sent. How's that any different here that Bloomingdale's is getting the information that your client is sending on the website? They're just using the 21st century equivalent of the bookkeeper to do it. I think there are factual differences there. The difference here is Full Story is opening the mail. And as far as me, the letter sender goes, I've never seen Full Story in my clerk shop. I have no idea that's the bookkeeper. They're a third party that's opening the mail while it's on the way. Right, but when you went to the general store in 1820, you never saw the guy in the back room either. Yeah, sure. But you could at least see the person you're talking to. If you talk to the desk clerk and then they turn and tell the bookkeeper later, those are different fact patterns. We're talking about real-time interception here. We're talking about a statute that says you cannot use technological devices to intercept electronic communications in transit without consent. I mean, these are wiretapping laws. They've been on the books a long time. They're pretty serious stuff. And all they're doing is protecting a traditional right back in the day. So we could debate the merits. Again, I think that's after the court assumes jurisdiction. You're close enough here. You're talking about a right. And maybe we have some differences in whether it's a good claim or a bad claim, but you've invoked a right that exists. And that's all we really need to show for Article III purposes. All right. Thank you very much. We appreciate the argument of all counsel. And we will come down and greet counsel and then move on to our last case.
judges: G. Steven Agee, Toby J. Heytens, Nicole G. Berner